UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAQUILLE HUSTON, | No. 2:21-cv-02277 AC |
| Petitioner, | |
| v. | ORDER AND |
| PATWIN HORN, Warden, | FINDINGS AND RECOMMENDATIONS |
| Respondent.[1] | |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the Third Amended Petition, ECF No. 16, which challenges petitioner's 2017 conviction for first degree murder and related offenses. Respondent has answered, ECF No. 28, and petitioner has filed a traverse, ECF No. 31.

BACKGROUND

I. Proceedings in the Trial Court

A. Preliminary Proceedings

Petitioner and co-defendant Dayvon Terrell Stroupe were charged in Sacramento County

---

[1] A federal petition for writ of habeas corpus must name as respondent the state officer having custody of the petitioner. See 28 U.S.C. § 2254; Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts; Smith v. Idaho, 392 F.3d 350, 354-55 (9th Cir. 2004). Accordingly, Patwin Horn, Warden of Kern Valley State Prison (petitioner's current place of incarceration, see ECF No. 44), is substituted as respondent herein.

1

with the robbery of Vincent Amaya and Alex Amaya, and with Vincent's murder in the course of the robbery. The case was tried to separate juries in a single proceeding.

   B. The Evidence Presented at Trial[2]

    1. Prosecution Case

     a. The Crimes

Stroupe lived in a duplex in Sacramento. His friends often congregated there to smoke marijuana, eat, and drink. On November 17, 2014, Stroupe, petitioner, Antwain West, and Gregory Cooper were at Stroupe's duplex smoking marijuana. When they ran out of marijuana, petitioner said he knew where to get some more.

Petitioner, who had a gun with him at the duplex, contacted Vincent Amaya asking to buy marijuana. Petitioner told his girlfriend, Briesha M., who was present, that the plan was to take the gun and commit a robbery to get some marijuana. Briesha had stolen her father's semiautomatic handgun and she later told detectives that it was the firearm involved in the crimes.

Petitioner, Stroupe, West and Cooper set out together to get the marijuana, meeting Vincent and Alex Amaya at an apartment complex. The Amayas arrived in Vincent's Acura, which had a subwoofer and amplifier screwed into the trunk. At the apartment complex, four men robbed Vincent and Alex of the amplifier and marijuana, and Vincent was shot and killed.

     b. Interview with Alex Amaya

Detective Mark Johnson interviewed Alex in the early morning hours after Vincent was killed. At trial, Alex testified that he did not remember many of the details of that night. Accordingly, the prosecution relied on his statement to the detective to establish important facts.

In his interview with Detective Johnson, Alex said that four black men were involved in the robbery and murder. In Alex's interview with the detective and in the trial court, the perpetrators were referenced as suspect numbers one through four. Alex said suspect number one approached Vincent's car. Suspect number one (later identified as petitioner) was dark-skinned,

---

[2] The following summary is adapted from the unpublished opinion of the California Court of Appeal, ECF No. 27-22 at 3-6.

skinny, five feet, eight inches tall, and about 19 or 20 years old, wearing a solid gray or white hoodie. Petitioner approached the Acura, and Vincent told him to get in the backseat, which petitioner did. Petitioner said he needed a "quarter," meaning marijuana. Vincent said he had it, but petitioner stalled for time until suspect number two approached the Acura at the front passenger window. Suspect number two (later identified as Antwain West) was light-skinned, fat, five feet, six inches tall, with an Afro in a bun, and wearing a gray sweater and hoodie.

According to Alex, West asked whether Vincent and Alex had marijuana. Vincent was sitting in the driver's seat and Alex was sitting in the front passenger seat. West pointed a chrome revolver at Alex and Vincent and told them not to move. Petitioner also pulled out a handgun and said, "I don't want you dead, but I wouldn't waste any time." Vincent responded by getting out of the car and starting to go around the front of the car, swearing at West and petitioner. West shot Vincent and then ran away.

After the shooting, two other black men came from behind other cars. One of them was suspect number three (Stroupe), whom Alex described as dark-skinned, six feet tall, skinny, with a short Afro and wearing a black hoodie. Stroupe had a handgun and approached the passenger side of the Acura. He told Alex to get out of the car and not to make any sudden movements or he would shoot him. When Alex was out of the car, Stroupe told Alex to empty his pockets. Alex showed Stroupe that his pockets were empty, and Stroupe had Alex take off his belt. Stroupe then tried to pistol whip Alex, but he missed.

Alex said that petitioner jumped into the front seat of the Acura and put the car in reverse, crashing into another car. He then put the car in drive and jumped out as it rolled forward into a different car. Petitioner opened the trunk and took the amplifier.

c.  Other Evidence

Testing of the Acura revealed Stroupe's and petitioner's palmprints on the car. Petitioner told Briesha M. that he took the marijuana and ran and that someone he knew was killed during the robbery.

Petitioner admitted in questioning by Detective Mark Johnson after his arrest, three days after the crimes, that he was involved in the crimes. He was to meet Vincent and planned to grab

3

the marijuana and run, but West unexpectedly approached the car and eventually shot Vincent.

Detective Ayers interviewed Stroupe three months after the crimes. Stroupe told the detective that it was supposed to be a robbery, but it turned into something else. Petitioner put the whole thing in motion. The four men approached the apartment complex together, and initially two of them approached the car while two of them (including Stroupe) stayed back.

### 2. Co-defendant's Testimony

Stroupe testified in his own defense. He stated that petitioner told him to stay in front of the apartment complex, because the person petitioner was buying from did not deal with people he did not know. While he was waiting in front of the apartment complex, Stroupe heard gunshots, so he ran away. When he returned to his duplex, the other three men were already there. They had marijuana and a white, powdery substance. Petitioner and Cooper were arguing, and petitioner said, "It went bad."

### 3. Defense Case

Petitioner did not present any witnesses.

## C. Outcome

On the murder count, petitioner's jury was instructed solely on a felony-murder theory. The jury convicted petitioner of first degree murder, with a special circumstance that the murder was committed during the commission of a robbery. However, the jury found not true an allegation that petitioner personally used a firearm. The jury also convicted petitioner of robbery, again finding not true a personal-firearm-use allegation.

Petitioner was sentenced to life without the possibility of parole for the special circumstance murder. He received a two-year sentence for the robbery, which was stayed.

## II. Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on February 24, 2021. ECF No. 27-22.[3] The California Supreme Court denied review on May 26, 2021. ECF No. 27-23 at 1.

---

[3] The judgment was modified as to a $400 "parole revocation fine," and the abstract of judgment was ordered corrected to remove an erroneous reference to three-strikes sentencing. Id. at 20.

During the pendency of the appeal, petitioner filed a pro se petition for resentencing under Cal. Penal Code section 1170.95. That petition was denied in the trial court, and petitioner appealed the denial. On April 17, 2020, the Court of Appeals dismissed the appeal for lack of jurisdiction. ECF No. 27-28.

Following conclusion of his direct appeal, petitioner filed a petition for resentencing under Cal. Penal Code section 1172.6. That petition was denied. ECF No. 27-29. Petitioner did not seek further review.

Petitioner filed no applications for collateral relief from the judgment of conviction.

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538

1  U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established
2  Federal law," but courts may look to circuit law "to ascertain whether…the particular point in
3  issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64
4  (2013).

5       A state court decision is "contrary to" clearly established federal law if the decision
6  "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529
7  U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state
8  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to
9  the facts of the particular state prisoner's case." Id. at 407-08.  It is not enough that the state court
10 was incorrect in the view of the federal habeas court; the state court decision must be objectively
11 unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

12      Review under § 2254(d) is limited to the record that was before the state court. Cullen v.
13 Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court
14 reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other
15 words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182.
16 Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is
17 confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d
18 724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims
19 summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a
20 state court denies a claim on the merits but without a reasoned opinion, the federal habeas court
21 must determine what arguments or theories may have supported the state court's decision, and
22 subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 102.

## DISCUSSION

I.    Claim One

    A. Petitioner's Allegations and Pertinent State Court Record

26      Petitioner captions his first ground for relief as "conviction obtained by violation against
27 self-incrimination," but his statement of the claim implicates the sufficiency of the evidence:
28 ////

6

> Prosecution used a statement by me for a felony murder theory but *never provided any real evidence* to prove this theory besides just using the crime itself.

ECF No. 16 at 7 (emphasis added). There are no further allegations in support of the claim.

In response to respondent's contention that no Fifth Amendment self-incrimination claim has been exhausted, petitioner explains in his traverse:

> I was merely stating that due to lack of law I thought that by cooperating I was helping but I really was hurting myself at 19 yrs old I didn't know the law language that felony murder that constituted felony murder my brain was not fully developed if it was I would have had an attorney present before I made a statement

ECF No. 31 at 2.

Importantly, the traverse also presents "arguments in rebuttal" which argue the insufficiency of the evidence to establish reckless indifference to life, intent to use force or fear, and major participant role vis-à-vis the robbery. Id. at 3-6. Although petitioner reiterates his theory that his youth undermines his statement, this point is made in the context of a broader argument that the prosecution failed to prove the intent necessary to support the jury's felony-murder verdict. Id. at 6.

### B. Petitioner's Challenge to the Sufficiency of the Evidence

#### 1. The Claim is Best Construed as Challenging the Sufficiency of the Evidence

Because the petition states the basis for relief on Claim One as the lack of "any real evidence" to prove felony-murder, ECF No. 16 at 7, the undersigned construes Claim One as contending that the conviction was unsupported by evidence sufficient to satisfy due process.

#### 2. The Clearly Established Federal Law

Due process requires that each essential element of a criminal offense be proven beyond a reasonable doubt. United States v. Winship, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of evidence to support a conviction, the question is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1974). If the evidence supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved any such conflicts in favor of the prosecution," and the court must "defer

to that resolution." Id. at 326. "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 2 (2011).

### 3. The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The Court of Appeal ruled in relevant part as follows:

> Huston argues there was insufficient evidence that he intended to aid and abet the robbery underlying the felony-murder conviction. He claims that, at most, the evidence shows he intended to take Vincent's marijuana without the use of force or fear, and therefore he was not engaging in a robbery at the time Vincent was killed, and he cannot be criminally liable for felony murder.
>
> Huston's argument relies on the fact that the jury did not find true the enhancement allegations that he used a firearm in the commission of the murder or robbery. He asserts the jury necessarily found that West shot Vincent. But Huston's premise, for which he cites no authoritative support, is false.
>
> "[A]n inherently inconsistent verdict is allowed to stand; if an acquittal of one count is factually irreconcilable with a conviction on another, or if a not true finding of an enhancement allegation is inconsistent with a conviction of the substantive offense, effect is given to both." (*People v. Santamaria* (1994) 8 Cal.4th 903, 911, citing *United States v. Powell* (1984) 469 U.S. 57 [].) "When a jury renders inconsistent verdicts, 'it is unclear whose ox has been gored.' [Citation.] The jury may have been convinced of guilt but arrived at an inconsistent acquittal or not true finding 'through mistake, compromise, or lenity....' [Citation.] Because the defendant is given the benefit of the acquittal, 'it is neither irrational nor illogical to require her to accept the burden of conviction on the counts on which the jury convicted.' [Citation.]" (*Santamaria*, at p. 911.)
>
> In *People v. Nunez* (1986) 183 Cal.App.3d 214, 225-228, the court applied the inconsistent-verdicts rule to an enhancement finding. "A jury's finding on an alleged enhancement that an accused was not armed with a firearm or did not personally use a firearm does not necessarily mean that the accused was not a direct perpetrator of the crime." (*Id.* at pp. 225-226.)
>
> Huston correctly notes that, to be guilty of felony murder based on robbery, the defendant must have intended to commit a robbery or

> aid and abet the commission of a robbery before or at the time of the killing. (CALCRIM No. 540B.) Here, however, there is substantial evidence that Huston intended to rob Vincent and Alex before or at the time West shot Vincent. Huston focuses on his statements to Detective Johnson three days after the killing that he only intended to grab the marijuana and run, arguing the prosecution "did not present any evidence that directly controverted or undermined [Huston's] description of his plan to grab Vincent's marijuana and flee without the use of force or fear."
>
> To the contrary, there was substantial evidence of an intent to use force or fear to obtain the marijuana (that is, commit a robbery) before or at the time West shot Vincent. Stroupe said it was supposed to be a robbery from the beginning. Huston had a gun at Stroupe's duplex, and he produced the gun as soon as West approached the car. Huston said, "I don't want you dead, but I wouldn't waste any time." Briesha M. testified that she gave Huston a gun that was involved in the crimes and that Huston told Briesha the plan was to take the gun and commit a robbery to get some marijuana. Even if there was evidence that Huston may have originally planned to take the marijuana without force or fear (evidence such as Huston's statement to Detective Johnson that he intended only to grab the marijuana and run), we must examine the evidence in the light most favorable to the verdict. (*Perez, supra*, 50 Cal.4th at p. 229.) Therefore, Huston's use of the gun to threaten Vincent and Alex before West shot Vincent established the requisite intent to use force or fear. Huston's contention that the evidence was insufficient that he intended to commit a robbery or aid and abet a robbery before or at the time of the killing is without merit.

ECF No. 27-22 at 8-10.

Petitioner also argued on appeal that the evidence was insufficient to support the special circumstance finding that the murder was committed during the commission of the robbery. Specifically, he claimed the evidence was insufficient to establish (1) that he intended to aid and abet the robbery before or at the time of the killing, or (2) that he was a major participant in the crime who acted with reckless indifference to human life. Id. at 10. On the first issue the Court of Appeal ruled as follows:

> Huston claims the evidence was insufficient to establish that he intended to aid and abet the robbery before or at the time of the killing. To prove the robbery-murder special circumstance, the prosecution was required to prove Huston formed the intent to commit the robbery or aid and abet the robbery before or at the time the victim was killed. (*People v. Valdez* (2004) 32 Cal.4th 73, 105.) In support of his claim, Huston makes the same argument, discussed above, that there was insufficient evidence to establish that he formed the intent to commit robbery or aid and abet the robbery before or at the time of the killing. Having fully discussed

how the facts established Huston's intent to commit robbery before the killing, we likewise reject the argument with respect to the special circumstance finding.

Id.

As to the major participant issue, the appellate court ruled as follows:

> We next turn to whether the evidence was sufficient to sustain the robbery-murder special circumstance. Huston argues the evidence was insufficient to establish that he was a major participant in the crime who acted with reckless indifference to human life.
>
> The trial court properly instructed the jury that, to find true the robbery-murder special circumstance in a case in which the defendant was not the actual killer, the prosecution must establish: "1. The defendant's participation in the crime [here, robbery] began before or during the killing. [¶] 2. The defendant was a major participant in the crime; [¶] AND [¶] 3. When the defendant participated in the crime, he acted with reckless indifference to human life." (CALCRIM No. 703.)
>
> The robbery-murder special circumstance applies to the actual killer and to aiders and abettors who either act with intent to kill (§ 190.2, subd. (c)) or who are major participants who act with reckless indifference to human life. (§ 190.2, subd. (d).) As the California Supreme Court noted in *People v. Banks* (2015) 61 Cal.4th 788, 798 (*Banks*), the elements of the robbery-murder special circumstance in section 190.2, subdivision (d), come from the United States Supreme Court's decision in *Tison v. Arizona* (1987) 481 U.S. 137 [95 L.Ed.2d 127]. In *Tison*, the court held that the death penalty cannot be constitutionally imposed on a nonkiller aider and abettor unless that person either intended to kill or was a major participant who acted with reckless indifference to human life. (*Id*. at p. 158, fn. 12.) This language was codified in section 190.2, subdivisions (c) and (d), by the electorate as part of Proposition 115 and it applies to both the imposition of the death penalty and life without the possibility of parole. (*Banks*, at pp. 797-798, 800, 804.)
>
> Major participation requires that a "defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Banks*, *supra*, 61 Cal.4th at p. 802.) Here it is clear that Huston was a major participant in the robbery. There is substantial evidence of the following: Huston said he knew where to get marijuana, he had a gun at Stroupe's duplex, he told Briesha the plan was to take the gun and commit a robbery to get some marijuana, he contacted Vincent, he stalled inside Vincent's car until West arrived, he pulled out the handgun in his possession and mentioned not wasting time, he jumped into the front seat of the Acura and crashed into other cars, and he took the amplifier.
>
> As for reckless indifference, the court in Banks observed: "Reckless indifference to human life 'requires the defendant be "subjectively

10

aware that his or her participation in the felony involved a grave risk of death." ' " (*Banks, supra*, 61 Cal.4th at p. 807, italics omitted.) "Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies the constitutional minimum." (*Id.* at p. 808.)

Recently, the California Supreme Court adopted the Model Penal Code definition of reckless indifference, which requires that the defendant " 'consciously disregard[ ] a substantial and unjustifiable risk' " of death and that the risk " 'be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.' " (*People v. Clark* (2016) 63 Cal.4th 522, 617 (*Clark*).) This definition recognizes that, in addition to the subjective element of reckless indifference, there is also an objective element. (*Id.* at p. 622.) "[R]ecklessness is not determined merely by reference to a defendant's subjective feeling that he or she is engaging in risky activities. Rather, recklessness is also determined by an objective standard, namely what 'a law-abiding person would observe in the actor's situation.' " (*Id.* at p. 617.)

Whether there is substantial evidence supporting a finding of reckless indifference to human life is a question that requires consideration of the totality of the circumstances. (*Banks, supra*, 61 Cal.4th at p. 802.) We consider circumstances such as (1) knowledge of weapons, along with use and number of weapons; (2) physical presence at the crime and opportunities to restrain the crime and/or aid the victim; (3) duration of the felony; (4) defendant's knowledge of the co-perpetrator's likelihood of killing; and (5) defendant's efforts to minimize the risks of the violence during the felony. (*Clark*, supra, 63 Cal.4th at pp. 618-623; *see also In re Scoggins* (2020) 9 Cal.5th 667, 677.)

Huston argues this was a "planned theft that did not anticipate the use of violence; rather, [Huston] simply planned on snatching the marijuana and running ...." And he asserts that "the jury specifically found the gun-use allegation not true ...." As we noted above, the jury's firearm-use finding does not prevent us from considering the evidence that Huston had a firearm and threatened to use it before West shot Vincent. Huston's argument is unpersuasive because it considerably understates his involvement in the planning and execution of the robbery.

Huston also claims that West's decision to shoot Vincent was spontaneous and "self-volitional." However, it was Huston's planning and execution of the robbery with multiple perpetrators and firearms that led to a grave risk that Vincent would be killed. Huston was the primary mover in planning the armed robbery. He initiated the robbery and participated in the armed threats after West came to the car. Beyond these assertions, Huston does not attempt to analyze the relevant circumstances noted in *Clark*.

11

> Because Huston's argument is not supported by the evidence construed in the light most favorable to the jury's verdict, and because Huston does not attempt to analyze the circumstances noted in Clark, supra, 63 Cal.4th at pages 618-623, we need not undertake an analysis of those circumstances. Huston's contention that the evidence was insufficient to support the special circumstance verdict is without merit.

Id. at 11-13.

### 4. Objective Reasonableness Under § 2254(d)

Although the state court did not cite Jackson v. Virginia, supra, it construed the evidence in the light most favorable to the jury's verdict and discussed the evidence in relation to all elements of liability, thus applying the correct constitutional standard. The appellate court's rulings on questions of state law—including the elements of robbery and the robbery-murder special circumstance, and the definitions of "force and fear," "major participant" and "reckless indifference"—are unreviewable here. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (federal habeas court is bound by state court's interpretation of state law). The only question for this court is whether the state court unreasonably applied the Jackson standard in evaluating the evidence under the governing state law standards for robbery-murder.

There is nothing objectively unreasonable about the state court's analysis. The evidence cited by the court, construed in the light most favorable to the verdict, supports the jury's conclusions for the reasons explained. Petitioner urges a different interpretation of the evidence, but the California Court of Appeal was obliged under Jackson to give deference to the verdict and this court is obliged under 28 U.S.C. 2254(d) to give deference the state court's judgment. See Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011) (recognizing the "double dose of deference" that applies to sufficiency of evidence claims under Due Process Clause and AEDPA). Because this is not a case in which "no rational trier of fact could have agreed with the jury." Cavazos, 565 U.S. at 2, federal habeas relief is unavailable.

### C. Any Other Intended Claims Must Be Denied as Unexhausted

The petition does not clearly allege that petitioner's statement to the detective was involuntary, or otherwise obtained in violation of his constitutional rights (including the right against self-incrimination), or that its admission into evidence constituted error. As noted above,

1   it seems that petitioner's comments about his statement relate to its evidentiary value and are
2   forwarded here as part of a sufficiency of the evidence argument.  To the extent that petitioner
3   does intend to base a claim for relief on the jury's consideration of his statement, such a claim is
4   unexhausted and cannot be considered here.

5   Habeas petitioners must exhaust available state court remedies, giving those courts the
6   first opportunity to correct constitutional errors.  See 28 U.S.C. § 2254(b)(1)(A); Rose v. Lundy,
7   455 U.S. 509, 515 (1982).  A petitioner satisfies the exhaustion requirement by fairly presenting
8   his claims to the highest state court before presenting them to the federal court.  Baldwin v.
9   Reese, 541 U.S. 27, 29 (2004).  A federal claim is fairly presented if the petitioner has described
10  in state court both the operative facts and the federal legal theory upon which his claim is based.
11  See Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Wooten v. Kirkland, 540 F.3d
12  1019, 1025 (9th Cir. 2008); cert. denied, 556 U.S. 1285 (2009).  The federal constitutional basis
13  for the claim must be explicitly identified.  Duncan, 513 U.S. at 365-66.  Federal habeas relief
14  cannot be granted on an unexhausted claim.  § 2254(b)(1)(A).  An unexhausted claim may,
15  however, be denied on the merits.  § 2254(b)(2).

16  Petitioner did not challenge admission of his statement on appeal, see ECF No. 12 (AOB),
17  and he brought no state habeas petitions.  Accordingly, any potential claims related to this issue
18  are unexhausted and relief is therefore unavailable.

19  Moreover, any challenge to jury consideration of petitioner's statement would be
20  meritless.  While the jury learned that petitioner had admitted to Detective Johnson that he was
21  involved in the crimes, his statement was consistent with his theory of defense and the theory
22  argued here: that petitioner's intention was merely to meet Vincent, grab the marijuana without
23  using force or fear, and run—but that West unexpectedly approached the car and shot Vincent.
24  Because petitioner's statement to the detective was not inconsistent with his defense, its
25  admission cannot have prejudiced him.  And as outlined by the Court of Appeal, intent to rob,
26  major participant role, and reckless indifference to life were all proven by other evidence.

27  For all these reasons, Claim One should be denied.
28  ////

II. Claim Two: Prosecutorial Suppression of Exculpatory Evidence

A. Petitioner's Allegations and Pertinent State Court Record

Claim Two alleges "conviction obtained by the unconstitutional failure of the prosecutor to disclose to the defendant evidence favorable to the defendant." ECF No. 16 at 7. The supporting facts are stated, in their entirety, as follows:

> Prosecution failed to provide or present at trial statements from a witness that was present on the scene who testified that I did not act with reckless or endangerment to human life my actions are a key element to the crime not just the crime itself the statements would of disputed prosecution theory which constituted a conviction on felony murder theory

Id.

B. The Claim is Unexhausted

No claim was ever submitted to the state courts alleging that the prosecution suppressed exculpatory evidence. Accordingly, federal habeas relief is unavailable. See 28 U.S.C. § 2254(b)(1)(A).

C. The Claim is Meritless

The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland, 373 U.S. 83, 87 (1963); United States v. Agurs, 427 U.S. 97, 107 (1976). Evidence is material for Brady purposes if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the . . . proceeding would have been different." Cone v. Bell, 556 U.S. 449, 469-70 (2009). For a Brady claim to succeed on collateral review, petitioner must therefore show: (1) that the evidence at issue is favorable, because it is either exculpatory or impeaching; (2) that it was suppressed by the prosecution, either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued). Banks v. Dretke, 540 U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Petitioner's conclusory assertion that the prosecution failed to disclose exculpatory evidence does not provide grounds for relief. The petition does not identify or describe the

14

supposed witness, nor allege what favorable testimony that person would have provided. There are no facts before the court from which the favorability of the evidence, or whether it was suppressed by the prosecution, or its materiality, could possibly be evaluated. Accordingly, petitioner has not stated a claim under Brady. See Runningeagle v. Ryan, 686 F.3d 758, 769-71 (9th Cir. 2012) (to state a Brady claim, petitioner must identify the undisclosed evidence); see also Barker v. Fleming, 423 F.3d 1085, 1099 (9th Cir. 2005) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.") (quoting United States v. Croft, 124 F.3d 1109, 1124 (9th Cir. 1997)); Downs v. Hoyt, 232 F.3d 1031, 1037 (9th Cir. 2000) (rejecting a Brady claim in part because petitioner's arguments were speculative).

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's insufficient evidence claim was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). All other putative claims are unexhausted. Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights.

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall:

1. Randomly assign a U.S. District Judge to this case;
2. Update the docked to reflect the substitution of Patwin Horn as Respondent. See n.1, supra.

IT IS FURTHER RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file

1 | objections within the specified time may waive the right to appeal the District Court's order.
2 | <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 | DATED: October 7, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE